Good morning, Your Honors. May it please the Court, Counsel, my name is Sheree Firmani with the Office of the State Defender, and I represent the Appellant Charles Watkins. This morning I would like to address both issues raised in the brief. The State's evidence connecting Charles Watkins to the cocaine in this case was extremely weak. In an attempt to bolster the State's case, it sought to admit two improper pieces of evidence. First, the State sought to admit the very fact of Watkins' prior conviction for possession of cannabis with intent to deliver as other crimes evidence of his intent in this case, when it was actually pure propensity evidence. Second, the State sought to admit two highly prejudicial cell phone text message conversations that contained hearsay from unknown declarants. The State sought to admit these text message conversations without ever attributing the phone or any of the text messages to Watkins. Because the trial court erred in admitting this error and denied the defendant his right to a fair trial, this Court should reverse and remand. With regard to the first issue, the State sought to admit the very fact of Watkins' prior conviction of possession of cannabis with intent to deliver. Admission of this evidence was improper because the State failed to prove that the prior conviction was substantially similar to the charged offense. Also, the other crimes evidence was not probative of the defendant's intent to deliver in this case. Also, finally, it could not... Was there any similarity in the two crimes, in the possession of cannabis and the charged offense? Did they occur at the same place? Your Honor, no facts were presented to the judge. The State concedes in their brief that the prosecutor below did not provide the judge with a factual basis regarding the prior conviction. And because the judge didn't have any facts aside from the case number and the name of the offense, he could not have determined whether or not it was sufficiently similar. And also, this evidence was not probative of intent because intent wasn't at issue in this case. The State concedes in their brief that there was no debate that the cocaine in this case was intended for distribution. And also, the Illinois Supreme Court in Ilgin held that other crimes evidence of intent is admissible when the defendant places an innocent construction on his ax. And here, the defendant never raised any defense challenging intent. Their defense was possession. Correct. The salient issue here was whether or not the defendant constructively possessed the drugs. And this other crimes evidence, the bare fact of this prior conviction, would not have been admissible to prove possession. Well, the intent to deliver was an element of the offense charged, wasn't it? It was an element of the offense charged. And the trial judge specifically said the reason the trial judge based on the charge was allowing that evidence in was some evidence on the issue of the intent to deliver. Correct, Your Honor. But while other crimes evidence can be admitted for purposes of intent, here the judge had no facts to determine whether it was sufficiently similar to the charged offense. And the jury was not presented with any evidence to be able to know how to use this other crimes evidence of a prior intent to deliver conviction. And this evidence could have only been used as propensity evidence. Was there a request to have any instruction? Not that I recall, Your Honor. But the judge did instruct the jury that it should be used for intent. But even so, the instruction doesn't cure the error because it is part of the error. The judge is telling the jury to consider the bare fact that the defendant had been convicted before for possession of cannabis with intent to deliver that he intended to deliver the cocaine in this case. There's no similarities presented. There's nothing. It's pure propensity evidence, and that's exactly how the state used it in closing argument. The state used this evidence to argue that because he had a prior conviction for an intent to deliver offense, he intended to deliver the cocaine in this case. And also, the state referred to the defendant as a drug dealer over 12 times during their closing argument. And the erroneous admission of other crimes evidence here is a high risk of prejudice, and it ordinarily calls for reversal. Here, the jury was struggling in reaching a verdict. This is evidenced by the jury notes. And there were four other adults in the home besides Charles Watkins. And one of those individuals, Anthony Parker, was in the room adjacent to the kitchen, which is where the drugs were found. He was in the dining room. And in the kitchen, there was cannabis and cocaine found. And Anthony Parker had on his person, he had cannabis and he had eight packages of cocaine, which the state's expert testified were for sale. And there was no evidence connecting the defendant to this cocaine. He made no inculpatory statements admitting that that was his. There were no drugs on him. He was found in the back bedroom, nowhere near the drugs. The closest to possession was the money under the mattress on which he was lying, right? Well, Your Honor, there was money under the mattress that he was lying on. But just because there's money under the mattress and you're lying on a bed, it doesn't mean that because you're on top of the mattress, you know what is underneath that mattress, what's hidden under there. The state also did not present any... But that was the closest, right? Otherwise, he was in the bedroom, not in the kitchen area, right? He was not in the kitchen area, no. He was in the bedroom. But he just happened to be in the house, is kind of the defense, right? Correct. And there was no evidence tying him to the bedroom or to the kitchen. The state didn't prove that he had control over either. And in the bedroom where the money was found, there were no pictures of him, nothing indicating that he had control over that room. In fact, his ID showed he lived somewhere else, right? Correct, Your Honor. And that was also corroborated by Latanya Ross's testimony, that he was living at the address that was indicated on his ID. And here, because the evidence against the defendant was purely circumstantial, the trial court's error in admitting this evidence cannot be harmless. And because the trial court's error denied the defendant his right to a fair trial, we ask that this court reverse the remand with regard to the first issue. Regarding the second issue, the state sought to admit two text messages that Officer Dixon had recovered and photographed from one of the cell phones that was found in the same drawer as the cocaine. When the state was arguing for its admission in the lower court, the state admitted that it had no fingerprints connecting the defendant to the drugs, it had, you know, the defendant didn't have any drugs on him, and that also the defendant was found nowhere near the drugs. Judge Curry, when, you know, prior to admitting the text message conversations, recognized that admitting these entire text message conversations presented, you know, it presented a hearsay problem, and it would have put before the jury prejudicial evidence of drug transactions. Despite recognizing this, Judge Curry admitted two entire text message conversations that consisted of nine pages. Within those nine pages, there were only four text messages that referenced the defendant, Charles, or referenced, not the defendant, but referenced somebody that the unknown declarants referred to as Charles, and they made absolutely no references to drugs. The other incoming text messages, however, referenced drugs and drug dealing. The state, in their brief, concedes that the text message conversations should not have been read or shown to the jury. In order for this evidence to have been admissible, the state was required to present or to form two foundations, one for the photographs and the other for the text messages. There's only one case in Illinois discussing the admissibility of text messages, and that's a third district appellate case, People v. Chromic, and in that case, there were, the trial court admitted transcripts of text messages exchanged between the victim and the defendant, and there at trial, the person who prepared the transcript testified, the victim testified regarding the content of the text messages, the defendant acknowledged the accuracy of those, and also there were phone records corroborating the date and time of the text messages sent from the defendant's phone to the victims, as indicated in the transcript, were corroborated by the defendant's phone records. Here, the state did not provide any evidence, and there the court found that there was a proper foundation and that was admissible. Here, the state did not provide any foundation whatsoever. They provided absolutely no phone records, they never established who owned the phones, who the phone numbers were registered to, or who even authored the text messages, and they did not show who possessed the phones at the time that these were coming in. And the state argues that it didn't have to present this evidence because the text messages were admitted to show that they were intended for somebody named Charles, but the state ignores that authentication of evidence is a conditioned precedent for its admissibility. To authenticate a document, you can authenticate it by either direct or circumstantial evidence, such as a witness with personal knowledge of its content testifying to its content or establishing evidence of authorship. Here, the state did neither. The only witness who testified regarding the text messages was Officer Dixon, and Officer Dixon did not have personal knowledge of the contents of the text messages. The state conceived that he didn't know who the sender of the text messages was, who the receiver was, or who the unknown declarant was referring to as Charles. Because he did not have personal knowledge of this, he could not have provided a sufficient foundation for the text messages to be admitted. The state argues, however, that the trial court didn't err because it introduced these text messages to connect the defendant to the phone for that purpose. But the limitation is meaningless, because the judge put before the jury inadmissible hearsay statements of evidence of drug transactions, and the state had never tied either the text messages or the phone to the defendant in this case. In fact, the state, during closing argument, capitalized on the trial court's error and argued that the unknown declarants' assertions, which were unconfronted, established that people were seeking to buy drugs from Charles, and that the defendant was a drug dealer. As mentioned previously, they referred to him as a drug dealer over 12 times during the argument. Did they refer to the substance they sought to buy? I do not believe that they referred specifically to the substance, but they said that it was that these were people seeking to buy drugs from Charles. And this is the exact prejudice that Judge Curry recognized. And, Your Honor, as you asked whether or not the state had recognized that, or had said that this was the exact substance, while they didn't, the evidence that was put before the jury by admitting these text messages was evidence of a past sale for crack and seeking to buy cocaine, and the defendant was on trial for two different cocaine offenses. And here the prejudice was compounded by Judge Curry's instruction. First, Judge Curry told the jury that he was the one who was offering the evidence to them, and that is improper. And then he told the jury that he was doing this over the defendant's objection, so that the jury would know that he was going to offer it to them anyways, even though the defense was trying to keep this away from them. It's not unreasonable that a lay juror would have accorded more weight to evidence that they were receiving from the judge. Moreover, given that the state's evidence in this case was extremely weak with regard to connecting Watkins to the cocaine, there's a reasonable probability that the trial court's error contributed to the defendant's conviction. And because the trial court's error denied the defendant his right to a fair trial, this court should reverse and remand with regard to Issue 2. Thank you. Good morning, Your Honors. Please, the court, counsel. I will address both issues as well, but I'll start with Issue 2, with the text messages. It just feels like it's fresh for Your Honors. We're just discussing that. You concede that the judge shouldn't have allowed the text messages. Funny you should start there. Upon rereading my brief, I read that, and I thought about it, and I think I feel differently about it now. If I'm allowed to feel differently about it now, please indulge. I think with the judge, and I looked at the language, the way the judge admitted these messages, and he actually did admit the messages themselves, not just pieces of them. So I think I was wrong in the way I tried to present that in my brief. I believe the messages themselves were admitted in their entirety, the way I read the judge's language again. Again, I don't know why I thought that way six months ago when I wrote the brief, but I'm going to. Now, in hindsight, you feel different. I believe so. I believe so. So what is your position? Do you think the judge should not have admitted it? No, should have. Should have. In my brief, I say that he shouldn't have admitted the entirety of the messages, shown those to the jury. I don't feel that way. That was a misstatement on my part, because I believe the judge did admit the messages in their entirety themselves. You know, I mean, there was never a tie-in to the entirety of these messages. They contained a lot of stuff that nobody knows where it came from and other direct transactions. And in closing argument, the state really relied on those text messages to say that there was indicative of the defendant's intent to deliver drugs. And I know you say all this is harmless because of all the evidence. This is not a clear-cut case, is it? I mean, this is a case that it's very – it's inference after inference to get to a conviction. Well, Your Honor, I agree, but if there are enough inferences, the people – again, all of these inferences supported the jury's verdict, did they not, Your Honor? And if there are – you know, circumstantial evidence can point to the right answer. If there's significant – when you started that – What was your position with respect to the foundation? Was there an adequate foundation? Oh, Your Honor, yes. The people submit that there is, because – Who was the phone registered to? That was not developed. That was not revealed. But the people submit that it didn't need to be. I stand firm in that, Your Honor, because the only purpose for these text messages, the only purpose was to acknowledge that the name Charles was in this phone. That was it. And I don't think that's debatable. The only point to these messages, to present them to the jury, was to try and tie this phone to somebody named Charles. Now, I will totally agree that this isn't strong evidence, the fact that this man's name is in the phone and that the defendant happened to have the same name. Well, we don't know it's the man's name. The name Charles. The name Charles is in the phone. But, again, these were – this was just getting the evidence before the jury, and then the prosecutor attempted to tie – again, the people would submit that this isn't the strongest evidence in the world. But where were the phones found? The phone was found in the drawer with the cocaine. So that, again, adds support to it. But the fact that – And that was a common area of the residence. Yes, Your Honor, which the defendant who lived there, who stayed there for at least two or three weeks, which he told the officer he would clearly have access to that public area. So your position is it's as though there was a label on the phone that said Charles. No. No, Your Honor. That's what these text messages were showing, just that it was a phone that belonged to a man named Charles. Not that it belonged to a man named Charles. I think that's stretching it farther than even the prosecution below intended, just that the name was in the phone. Again, Your Honor. So how is that relevant? Your Honor, because the phone was found in the drawer with the cocaine. Again, can you tell me that connection? Sure. But the jury found that connection in addition to the fact that this gentleman resided there for up to a few weeks before this, the fact that his ID was there. I understand the ID had a different address on it. Maybe your argument would be more persuasive if his name was not commonly used, such as Charles. Perhaps, Your Honor. But, again, the jury found that these connections were sufficient, and the people who submit that the judge didn't abuse his. Well, the jury found that it reached a verdict based on the evidence that was presented. Sure. I mean, all these trials are about what you get in and what you keep out. Is that right? Sure. Yes, Your Honor. The state got all this stuff in. Yes. But, again, Your Honor, I would submit that the evidence aside from these text messages was more significant than the fact that this name, Charles, was in the phone. Your Honor, and I noted this in my brief, that Officer Dixon testified that there were most of them dealt with drug dealing. That was not objected to at all by counsel. That was freedom for the jury to consider in any way that they deemed relevant. And the people would submit that the fact that this. Say that again. What did you just say? That the fact that this was not objected to. Counsel didn't object to the fact that the officer testified that many of these messages in this phone. Well, they objected to the use of any of that, right? Not that part of the testimony. That came after he testified. The testimony was coming in after there was objections about using it. This was before. Now, this was before. The officer talked about these messages found in the phone and that they mainly dealt with drugs. And then the discussion about these specific messages came afterwards. The fact that these messages dealt mainly with drugs, hundreds of these messages, this was not objected to whatsoever. You don't seem convinced. That's the way I believe. I believe that's exactly the way it happened. So when Dixon is on the stand and the prosecution is asking, what else did you find? Dixon says, what? I found a phone? He said there were phones and he turned one of them on and found messages. Well, first he said forensics couldn't recover any messages. But just a couple months or so later, he happens to turn the phone on and pops hundreds of messages. Evidently. Evidently. Okay. And so that's just going on. There's no objection at that time. Is that correct? By defense counsel? Not to that part of the testimony, no. Okay. Yes. And so it's at that point he talks about what the content of those messages was. And then there was the objection. Well, the objection was not when he generally says that these dealt with drugs. There was no objection at that point. The objection was when they got to the specifics of certain of these messages. In an attempt to tie them to the defendant, there was the objection, in my recollection. My brief is crystal clear that there was no objection when he said that these hundreds of messages dealt with drugs. Okay. Okay, so that's the text message issue. Going to issue one, whether or not this other crimes evidence was properly admitted, the people submit that it was. As counsel said that this was pure propensity evidence, the people submit that that is entirely incorrect. This evidence was admitted quite clearly to show intent and not general propensity. The people submit that there was. The people met the threshold similarity that they needed to. How did you do that? I saw that question coming. Your Honor, I had the same issue that I argued before the court last month, and it went about as well as this is going. The people would submit that the fact that the prior conviction was for the intent to deliver an illegal drug, as the current charge was for the intent to deliver a legal drug, does provide the very low level of similarity needed in cases such as this. This isn't a case where we're dealing with modus operandi or common design, common plan. And the Supreme Court has said that in cases dealing with things other than modus operandi, common design, only general areas of specificity are needed and less similarity is required. Because the names, the titles of these crimes are so similar, and the people would submit that the inherent similarities of these charges on their face are so similar that the trial judge did not abuse his discretion in finding that the current conviction was similar to the prior conviction. The intent to deliver X and the intent to deliver Y. That's the people's argument, Your Honor. Again, the standard of review isn't an abuse of discretion. Was this trial judge's decision such that no other reasonable person would agree with it? The people would submit that based on the surface of the titles of these convictions, that a reasonable person would adopt the view that this trial judge did. The people would further submit that, of course, this was relevant to show intent. As, Justice Carter, you mentioned to counsel that this was an element of defense. Of course, this is probative to that particular element. And the people would further submit that the trial judge didn't abuse his discretion in finding that the prejudice, the danger of unfair prejudice did not substantially outweigh the probative value of this particular evidence, because, again, it is probative towards the element of intent. With that, the people would request that this Court affirm the decisions below. If there are any other questions, I'd be happy to answer them. I'd like to address a few points. Counsel argued that Watkins said that he had been living there for two to three weeks. There is unrebutted testimony that his girlfriend, who is extremely ill, was living there with and as was his child, and that he would go there to help out. Do we know what his child's name was? I don't have his child's name written down here. It might have been Charles? Perhaps. And, in fact, there was another person, the person who leased the homes. She had a boyfriend whose name was Charles. Is that in the record? I'm sorry? Is that in the record? Yes, it is. There was unrebutted testimony. I believe it was Latonya Ross who testified that the leaseholder's boyfriend, his name was Charles. And, Justice Holdridge, as you mentioned before, the ID showed a different address, and this was corroborated by Latonya Ross' testimony. Also, with regard to harmlessness, it seems somewhat disingenuous for the state to now argue on appeal that these errors were harmless when, in the court below, they conceded that they had no evidence connecting the defendant to the drugs. They conceded that they had no fingerprints, no drugs on the defendant. The defendant wasn't found near the drugs. Regarding the text messages, the state argues that providing a foundation for the photos would be enough to establish a foundation for the admissibility of the text messages. If this court were to find that that is enough, it would render the rule against hearsay to be meaningless, and it would allow for the state or any proponent of photographed documentary evidence to just go and, or documentary evidence that would be inadmissible, to just photograph it and then lay a foundation for the photo and then have that photo admitted and get otherwise inadmissible evidence before the court or the jury. Also, the state argues that the text messages that Officer Dixon had testified that there were, you know, hundreds of drug-related text messages, whether or not there were hundreds of drugs-related text messages, do not connect the phone in any way to the defendant. And so the fact that defense counsel may not have objected to that is irrelevant to the fact that the judge allowed prejudicial and admissible uncontested declarations of unknown declarants seeking to buy drugs from somebody named Charles. The evidence that was presented when presenting the specific content was not merely cumulative of that there were text messages, drug-related text messages. It was distinctly different. Also, Your Honor, I'll move to the first issue. The state argues that here this evidence was relevant. As noted during my opening argument, this evidence was not relevant. And the state argues that, based merely on the names, this provides the low level of similarity, or that in order for this evidence to be admitted. But the court has never held, because this isn't a modus operandi case, the court has held that general areas of similarity are sufficient, you know, can satisfy the substantial similarity requirement. It doesn't say that only general similarity is required. It says general areas of such similarity, but it still requires that there is substantial similarity. And here the error was far from harmless. The state argues that the admission of the other crime's evidence was harmless. However, when cases are based purely on circumstantial evidence, as the case was here, the admission of that evidence could not have been harmless. And also with regard to the text messages, there was no evidence connecting the defendant to the phone, and the state's evidence was extremely weak in the trial court. So there's a reasonable probability that the trial court's error contributed to his conviction. Because both of the court's errors denied the defendant his right to a fair trial, we ask this court to reverse and remand. Thank you. May I ask you a question, why you didn't raise the sufficiency of the evidence? Why didn't I raise sufficiency of the evidence? Because you're not seeking an outright reversal, you're just asking for a remand for retrial, is that correct? Yes, Your Honor, those are the issues that I did raise. Okay, thank you. Court will take this matter under advisement and render a decision with dispatch.